UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. RUSSELL, <br><br> Plaintiff, <br><br> v. <br><br> CAPTAIN MARCONI, RACHELLE BRAUN, MADISON COUNTY AND JOHN/JANE DOE EMPLOYEES OF MADISON COUNTY, MADISON COUNTY SHERIFF'S DEPT. AND JOHN/JANE DOE EMPLOYEES OF MADISON COUNTY, and M. DAMBACHER, <br><br> Defendants. | Case No. 20-cv-108-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants Rachelle Braun and Mary Dambacher, medical providers working at the Madison County Jail ("Jail") (Doc. 116). Plaintiff Steven D. Russell, a pre-trial detainee in the Jail at the relevant times, has responded to the motion (Doc. 119), and Dambacher has replied to that response (Doc. 122). Braun asks the Court to allow her to join Dambacher's reply (Doc. 123), and the Court will allow her to do so.

**I.    Background**

Russell filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. In his Complaint, he complains of the dental care he received from Nurse Braun in 2019 and 2020 while he was an inmate at the Jail. He lost a filling and had a rotten and/or infected tooth, which caused him pain and trouble eating, but Braun told him detainees could not see outside dentists. In August 2020, the Court issued a preliminary injunction requiring the Jail administrator to take Russell to see an outside dentist, and the dentist extracted two of Russell's teeth.

In his First Amended Complaint, drafted by assigned counsel, he added Nurse Practitioner Dambacher as a defendant in his medical care claim and added a new claim for retaliation. He asserts that after his mouth had healed from the extractions, Braun and Dambacher delayed his return to the normal, non-soft-food diet in retaliation for his lawsuit against them seeking dental care.

There is evidence from which a reasonable jury could find the defendants unreasonably failed to obtain care from a dentist for Russell, so the Court will deny summary judgment on that claim. However, there is no evidence that the defendants delayed returning Russell to a normal diet in retaliation for filing this lawsuit against them, so the Court will grant summary judgment on that claim.

## II.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Hansen v. Fincantieri Marine Grp.,* 763 F.3d 832, 836 (7th Cir. 2014).

Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S.

at 250 (internal quotations omitted).  The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party."  *Hansen*, 763 F.3d at 836 (internal quotations omitted).  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (internal quotations omitted).

### III.     Relevant Facts

Viewing the evidence and drawing all reasonable inferences in favor of Russell, the evidence in the file establishes the following relevant facts for the purposes of this motion.

Russell was a pretrial detainee confined in the Jail from April 28, 2018, to sometime in June 2022.  He did not report any dental problems when he was booked into the Jail, but about a year later he developed one.

In a nutshell, Russell began suffering from tooth pain around July 2019.  By December 2019, the problem had evolved into a missing filling and the rotting of that tooth.  Medical staff advised Russell to chew on the other side of his mouth to avoid pain, but then by June 2020, a molar on that side shattered.  Throughout this ordeal, Russell suffered pain and had difficulty eating, especially when dental problems developed on both sides of his mouth.  He filed numerous sick call slips and grievances asking to be seen by a dentist.  Braun and/or Dambacher told Russell that the Jail does not send detainees out of the Jail for dental care.  However, they responded to Russell's many dental complaints by telling Russell to brush his teeth regularly, by advising him to chew on the side of his mouth that was not in pain, by advising him to take Tylenol, by prescribing antibiotics and Peridex (a medicated mouth rinse), by providing him dental wax (a temporary fix for a lost filling), and/or by ordering that he receive a diet with only

soft foods ("soft diet").  Despite all these prompt responses, treatments, and recommendations, none relieved Russell's pain or cured his underlying dental problems.

More than a year after his dental problems began, the Court granted a preliminary injunction ordering the Jail administrator to take Russell to a licensed dentist.  On August 18, 2020, within a week of the preliminary injunction, a dentist extracted Russell's two problem teeth.  In his after-care instructions, the dentist ordered Russell to eat only soft nutritious foods on the day of the extraction.  The dentist also recommended ibuprofen as needed and rinsing with saltwater.  The dentist said Russell could resume eating normally the following day or as soon as it was comfortable.

Understandably, Russell was anxious to get off the soft diet he had been on since June 23, 2020, which consisted mainly of cheese sandwiches.  When the Jail kept Russell on a soft diet for longer than the dentist ordered, on August 25, 2020, he asked that the soft diet be discontinued because his pain and swelling had subsided.  Without any medical personnel examining Russell's mouth, Dambacher decided to keep Russell on a soft diet for another week.  Notwithstanding the fact that neither she nor a nurse had looked at Russell's extraction sites, she assumed that Russell had not healed sufficiently to withstand foods like pretzels and chips, which are part of the regular Jail diet and which would pose a danger of reopening the extraction wounds and causing an infection.  Russell was allowed to go back to a regular diet the following week.

Two claims remain in this lawsuit:

**Count 1** against Braun and Dambacher for denying Plaintiff adequate dental care for his lost filling, dental pain, and infection at the Jail in 2019-20; and

**Count 3** against Braun and Dambacher for denying Plaintiff a regular diet in retaliation for filing this lawsuit against them for the denial of medical care at the Jail in 2019-20.

The defendants seek summary judgment on both claims.

### III. Analysis

#### A. Count 1

Russell's medical claim is governed by the Fourteenth Amendment objective reasonableness standard. Relying on the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Seventh Circuit Court of Appeals holds that the objective reasonableness standard applies to all Fourteenth Amendment conditions of confinement claims brought by pretrial detainees. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). This includes claims of inadequate medical care. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

The controlling inquiry in the medical context consists of two steps. The first step focuses on the intentionality of the defendant's conduct and asks "whether the medical defendant[] acted purposefully, knowingly, or perhaps even recklessly when [he] considered the consequences of [his] handling of [plaintiff's] case." *See Miranda*, 900 F.3d at 353. The second step asks whether the challenged conduct was objectively reasonable based on the totality of the circumstance faced by the defendant. *Id*. at 354. Persistence in a course of treatment known to be ineffective has long supported a finding of deliberate indifference, *White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022); *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), and the Court believes it can support a finding of objective unreasonableness too.

The evidence shows that Russell developed a painful dental problem in July 2019 under the care of Braun and Dambacher and that the pain and its consequences persisted, and even worsened, until August 2020 when the Court ordered the Jail to let Russell see a dentist. The defendants did not ignore his trouble, but for over a year they persisted in conservative treatment

that neither relieved Russell's pain nor improved his dental condition.  And even if they did not have the authority to make an outside dentist appointment for Russell themselves, they certainly had the ability to inform someone who had that authority—or the authority to bring a dentist into the Jail—of the dire nature of Russell's urgent need to see a dentist.  Their failure to get a dentist appointment was unreasonable, as it became clear that the Jail was able to get a dental appointment for Russell in short order in August 2020.  Instead, he suffered unnecessary pain and impairment of his eating for more than a year.  And then when that problem was fixed, they declined to dispense ibuprofen or make saltwater available to Russell as the dentist had ordered.  A reasonable jury could find that Braun and Dambacher acted purposefully to treat Russell, but that their treatment was objectively unreasonable and caused him to suffer unnecessary pain, eating impairment, and further dental damage by persisting in treatments that were ineffective.  They are not entitled to summary judgment on Count 1.

    B.    Count 3

Under the First Amendment jurisprudence, jail officials may not retaliate against a detainee for filing grievances or lawsuits complaining of the conditions of their confinement.  To withstand summary judgment on his First Amendment retaliation claim, a plaintiff must present "evidence sufficient to allow a reasonable jury to conclude [he] engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action.  *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022).[1]

There is no real dispute that Russell's filing this lawsuit was an activity protected by the

---

[1] The protected activity must have been the "but-for" cause of the adverse action.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009).

First Amendment. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) ("inmates have a right under the First Amendment to seek administrative or judicial remedies of conditions of confinement (internal quotations omitted)). The defendants do not suggest being placed on a soft diet is insufficiently adverse to dissuade a reasonable person from exercising protected activity. They focus instead on whether there is sufficient evidence that Russell's litigation caused the extended soft diet.

Russell sued Braun in his original complaint in January 2020, and he was not placed on an extended soft diet until August 2020, seven month later, too late in the current circumstances to suggest causation absent other evidence of a retaliatory motive. However, Russell's assertions of retaliation are pure speculation. As the Seventh Circuit has recently noted, to infer that every officer against who a grievance or lawsuit has been filed harbors a retaliatory motive against the grievant is too sweeping an inference to draw without additional evidence of retaliatory motive. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). Russell has pointed to no such additional evidence.

As for Dambacher, she was not brought into this lawsuit until Russell filed an amended pleading in November 2020, months after Dambacher delayed Russell's being restored to normal meals. There is no way litigation against her could have caused her to retaliate against Russell because there was no litigation against her at the time. Even if Russell's claim could be construed as "retaliation" to discourage future litigation, as noted with Braun, a defendant cannot be presumed to act with an improper motive just because a detainee may sue her.

Further, Dambacher has offered a legitimate reason for failing to restore Russell to a regular diet weeks after the dentist said he could have one. Although neither she nor anyone else examined him, and although Russell himself said his pain and swelling had resolved, she

7

assumed his gums were not completely healed within a week after the surgery, and she wanted to prevent him from being served foods that could endanger his healing. To the extent she was wrong and Russell was provided a soft diet longer than he needed, her failure to examine him to make an accurate assessment of his healing amounts to no more than negligence, which cannot support a constitutional claim.

Because there is insufficient evidence of retaliation as the cause of the extended soft diet restriction, the Court will grant the defendants' summary judgment on Count 3.

**IV.   Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** defendant Braun's motion to join the reply brief of defendant Dambacher (Doc. 123);

- **GRANTS in part** and **DENIES in part** defendant Braun and Dambacher's motion for summary judgment (Doc. 116). The motion is **GRANTED** as to Count 3 and **DENIED** as to Count 1, which remains for trial; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court will schedule a telephone status conference by separate order to select dates for the Final Pretrial Conference and Jury Trial.

**IT IS SO ORDERED.**
**DATED:  May 18, 2023**

                                                  s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **DISTRICT JUDGE**